Norman D. HOLMAN, Plaintiff,

v.

ANCHOR DISTRIBUTORS, INC., Defendant.

No. 77–385C(1).

United States District Court, E. D. Missouri, E. D.

June 8, 1979.

Kenneth M. Chackes; Chackes & Hoare, St. Louis, Mo., for plaintiff.

Theodore D. Ponfil; Blumenfeld, Kalishman, Marx, Tureen, & Paster, P. C., Clayton, Mo., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MEREDITH, Chief Judge.

This matter was tried to the Court. The Court has been duly advised by testimony, exhibits and briefs of the parties.

### FINDINGS OF FACT

1. Plaintiff Norman Holman is a black male who was employed by the defendant at its downtown store on November 18, 1972. Plaintiff's employment was terminated on April 12, 1973. Plaintiff made a complaint to the Equal Employment Opportunity Commission on the date he was discharged, claiming discharge because of his race. This action was originally brought under 42 U.S.C. §§ 1981 and 2000e. The claim under 2000e was dismissed prior to trial.

2. Defendant Anchor Distributors, Inc., is a Missouri corporation which has one store in the downtown area of St. Louis, Missouri, and opened a second store in Clayton, Missouri, in October of 1972.

3. Plaintiff began work on November 19, 1972, at the downtown store on the second floor. His immediate supervisor was Barry Portnoy, white. The manager of the store was Milton Mayer, white. After six weeks employment the plaintiff was promoted to manager of the third floor and given a pay increase. No other whites were promoted as quickly as the plaintiff during plaintiff's period of employment with the defendant.

4. In April of 1973 a theft of merchandise and money from Anchor was discovered. The manager, Mr. Mayer, questioned two black employees, Gloria Ford and Larry Flenoid. They both admitted stealing from the company on more than one occasion and they stated that they had split the money with the plaintiff. Defendant discharged Ford and Flenoid for their participation in the thefts.

5. On April 12, 1973, Mr. Mayer called the plaintiff into his office and advised him that he had been implicated in thefts by Gloria Ford. He was given an opportunity

to meet with the president of the company, Morris Cohen, at the Clayton office and plaintiff declined to do so. Plaintiff was discharged because of his involvement in the thefts. Plaintiff was replaced by another black employee, Virginia Daniels.

6. The plaintiff's complaints are that the black employees are supervised more closely than the whites, that black customers are watched more closely than whites for thefts, that the check cashing policy is more strict with blacks than whites, that the whites are given more time off for lunch than the blacks, and that he was discharged because he was black. There was no evidence to support these allegations except the testimony of the plaintiff. The parties have stipulated that both blacks and whites are fired when it is established that they participated in thefts from the store.

7. Plaintiff introduced statistics which show that between January 1, 1972 and April 12, 1973 the defendant employed 262 persons. Of this number, there was information as to the race of only 202 employees. Of the 202 (77 percent of the defendant's work force), 30 were black and 172 were white. Blacks constituted 15 percent of defendant's work force for which racial data was available. The 1970 census establishes that blacks comprise 20 percent of the metropolitan area population. These statistics are not conclusive. Other statistics were introduced concerning where the blacks worked and the departments in which they worked, and have little bearing on this case.

8. The Equal Employment Opportunity Commission issued a determination letter on the merits of the charge filed by Larry Flenoid against defendant after his discharge for participation in the theft in which plaintiff was involved. The EEOC concluded that similarly situated white employees were treated the same as black employees and that Flenoid had been discharged because of such illegal activity.

9. Gloria Ford, who no longer works for the defendant, was a witness before the Court. She testified unequivocally that the plaintiff participated in the thefts with her and Larry Flenoid.

10. The Court finds that the plaintiff was fired only because he participated in a theft from the defendant, and further finds that he has no basis for complaint about working conditions during the period in which he was employed.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction under 42 U.S.C. § 1981.

2. This Court finds that plaintiff has not made a prima facie case of racial discrimination in the terms and conditions of his employment or of his discharge, and even if it could be found that he had made a prima facie case, the defendant has amply demonstrated and rebutted plaintiff's charges.

3. This Court will render judgment in favor of the defendant and against the plaintiff and costs will be assessed against the plaintiff.